**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RICHARD HUSTON AYCOCK,** | : | |
| **Plaintiff** | : | **No. 1:24-cv-02126** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **DR. MALHI, et al.,** | : | |
| **Defendants** | : | |

## MEMORANDUM

Currently before the Court are Defendants' three motions to dismiss the complaint filed by pro se Plaintiff Richard Huston Aycock ("Aycock"), one Defendant's motion to correct or amend the docket to reflect the correct spelling of their name, and Aycock's motion to appoint counsel.  For the reasons set forth below, the Court will: (1) grant the motion to correct or amend the docket to reflect the proper spelling of the moving Defendant's name; (2) deny Defendants' motions to dismiss Aycock's complaint; (3) deny without prejudice Aycock's motion to appoint counsel; and (4) establish deadlines for (a) Aycock to identify any Doe Defendants, (b) Defendants to file their answers to his complaint, (c) the parties to engage in discovery, and (d) the filing of dispositive motions.

## I.    BACKGROUND

### A.    Procedural History

Aycock, a convicted and sentenced state prisoner, commenced this action by filing a complaint, which the Clerk of Court docketed on December 11, 2024.  (Doc. No. 1.)  Aycock later filed an application for leave to proceed in forma pauperis (the "IFP Application") and a certified prisoner trust fund account statement on December 23, 2024.  (Doc. Nos. 5, 6.)  On January 8, 2025, the Court issued an Order granting the IFP Application and directing the Clerk of Court to send waiver of service forms to Defendants.  (Doc. No. 7.)

On January 21, 2025, three of the five individuals named as Defendants in Aycock's complaint—Dr. Malhi, Dr. Delisma, and L. Bitner ("Bitner")—filed a suggestion of bankruptcy and notice of stay in which they indicated that Wellpath Holdings, Inc. and certain of its debtor affiliates, such as their employer, Wellpath LLC ("Wellpath"), filed a voluntary petition for bankruptcy relief under chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas.  See (Doc. No. 9 at 1–2).[1]  Based on the automatic stay provisions for such bankruptcy filings set forth in 11 U.S.C. § 362, the Wellpath Defendants requested that the Court take notice of the automatic stay and stay this case until the bankruptcy proceedings reached a stage when the stay could be lifted.  See (id. at 6).

On February 7, 2025, the fourth and remaining non-Doe Defendant[2] named in Aycock's complaint, Nurse Gary ("Gary"), returned a waiver of service.  (Doc. No. 14.)  Four days later, this Court issued an Order staying this case and directing the Clerk of Court to mark the case as administratively closed pending further Order of Court.  (Doc. No. 15.)

On May 15, 2025, the Wellpath Defendants filed a supplemental submission in which they indicated that the bankruptcy court had approved Wellpath's plan of reorganization on May 9, 2025.  (Doc. No. 16.)  Then, on July 8, 2025, the Wellpath Defendants filed (1) a notice of intention to enter judgment of non pros for Aycock's failure to file certificates of merit ("COM" or "COMs") as required by Pennsylvania Rule of Civil Procedure 1042.3 (Doc. No. 17), (2) a motion to dismiss Aycock's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)

---

[1]  Hereinafter, the Court will collectively refer to Dr. Malhi, Dr. Delisma, and Bitner as the "Wellpath Defendants."  The Wellpath Defendants filed a second suggestion of bankruptcy and notice of stay on January 27, 2025.  (Doc. No. 12.)

[2]  Aycock names one unidentified defendant, Nurse John Doe ("Nurse Doe"), in his complaint. See (Doc. No. 1 at 3).

(Doc. No. 18), and (3) a brief in support of the motion to dismiss (Doc. No. 19).  Aycock filed a brief opposing the Wellpath Defendants' motion to dismiss on August 12, 2025.  (Doc. No. 20.)

The Wellpath Defendants filed a motion to dismiss Aycock's claims against them pursuant to Federal Rule of Civil Procedure 41(b) based on Aycock's failure to file COMs, along with a supporting brief on November 13, 2025.  (Doc. Nos. 21, 22.)  On November 24, 2025, the Court issued an Order which, inter alia, (1) lifted the stay, (2) directed Gary to file a response to Aycock's complaint within fourteen days, and (3) directed Aycock to file a response to the Wellpath Defendants' Rule 41(b) motion to dismiss within twenty-one days.  (Doc. No. 23.)

On December 4, 2025, Aycock filed a motion to appoint counsel.  (Doc. No. 24.)  On December 8, 2025, Gary filed (1) a motion to amend or correct the docket (Doc. No. 26), (2) a motion to dismiss for failure to state a claim under Rule 12(b)(6) (Doc. No. 27), and (3) a brief in support of the motion to dismiss (Doc. No. 28).  Aycock filed a brief opposing Gary's motion to dismiss on December 23, 2025.  (Doc. No. 29.)  The above motions are ripe for disposition.

B.    Allegations and Claims in Aycock's Complaint

Alcock generally alleges that for the two months following surgery performed on his left shoulder at Penn State Medical Center on June 7, 2024, he did not receive proper treatment while he was incarcerated at Pennsylvania State Correctional Institution Rockview ("SCI Rockview"). See (Doc. No. 1 at 4.)  Aycock asserts that he experienced "extreme and crucial pain in [his] shoulder, chest, and heart" after his surgery.  See (id.).  He spent six days in SCI Rockview's infirmary during which the medical staff gave him Tramadol[3] for "only" three to four days.  See

_____

[3] Tramadol is:

used to relieve moderate to moderately severe pain, including pain after surgery. It is also used to treat pain severe enough to require opioid treatment and when other

(id.).  Aycock was then "taken off [Tramadol] and giv[en a] muscle relaxer and Tylenol and Motrin again."  See (id.).  As a result, Aycock was "back to extreme and crucial pain in [his] body."  See (id.).

Aycock alleges that Drs. Malhi and Delisma "ignored his plea for help and left it up to the nurses to prescribe [him] medication."  See (id.)  Bitner, Gary, and Nurse Doe "ignored his pain" by continuing to give him Tylenol.  See (id.).

After Aycock made "doctor trips to Penn State Medical," he was prescribed medications while confined in SCI Rockview's Restricted Housing Unit ("RHU").  See (id.).  However, he never received the pain medication.  See (id.).  Consequently, Aycock requested that his counselor email the medical department so Aycock could receive his prescribed medication.  See (id.).

Aycock also asserts that he was assigned to the top bunk in his cell because his "cell mate was old and had the bottom bunk."  See (id.).  There was no ladder leading to the top bunk.  See (id.).  At one point, Aycock fell from the top bunk, further injuring his shoulder and causing him to be moved to a different cell.  See (id.).  It appears he complains that he was assigned to the top bunk because of the "doctor's [sic] and nurse's [sic] recommendations."  See (id.).

Due to Defendants' alleged conduct, Aycock alleges that his left shoulder "was subject to more injury," his "healing process was altered due to [improper] medical treatment," and he was

---

pain medicines did not work well enough or cannot be tolerated.  The extended-release capsules or tablets are used for chronic ongoing pain.

Tramadol belongs to the group of medicines called opioid analgesics.  It acts in the central nervous system (CNS) to relieve pain.

See Tramadol, The Mayo Clinic, available at: https://www.mayoclinic.org/drugs-supplements/tramadol-oral-route/description/drg-20068050 (last visited Feb. 3, 2026).

"in extreme pain and crucial [sic] throughout [the] process of healing." See (id. at 5). He indicates in his complaint that he asserts claims against Defendants under 42 U.S.C. § 1983 for their deliberate indifference to his serious medical needs in violation of the Eighth Amendment to the United States Constitution. See (id.). For relief, Aycock seeks compensatory and punitive damages. See (id.).

## II.    LEGAL STANDARDS

### A.    Rule 12(b)(6) Motions to Dismiss

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests. See Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief. See Fed. R. Civ. P. 8(a). Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 312 (3d Cir. 2010). The Court's inquiry is guided by the standards of Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009). Under Twombly and Iqbal, pleading requirements have shifted to a "more heightened form of pleading." See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is

facially plausible.  See id.  The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct.  As the Supreme Court instructed in Iqbal, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  See Iqbal, 556 U.S. at 679 (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).  Accordingly, to determine the sufficiency of a complaint under Twombly and Iqbal, the Third Circuit Court of Appeals has identified the following steps a district court must take under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief."  See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 556 U.S. at 679).  When following these steps, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

In addition, in the specific context of pro se prisoner litigation, the Court must be mindful that a document filed pro se is "to be liberally construed."  See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Higgs v. Att'y Gen., 655 F.3d 333, 339–40 (3d Cir. 2011) (explaining that "when presented with a pro se litigant, we have a special obligation to construe [their] complaint liberally" (citation and internal quotation marks omitted)).  Therefore, a pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers."  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks

6

omitted) (quoting <u>Estelle</u>, 429 U.S. at 106).  This means the Court must always "remain flexible, especially 'when dealing with imprisoned pro se litigants . . . .'"  <u>See</u> <u>Vogt v. Wetzel</u>, 8 F.4th 182, 185 (3d Cir. 2021) (quoting <u>Mala v. Crown Bay Marina, Inc.</u>, 704 F.3d 239, 244–45 (3d Cir. 2013))).  Moreover, when construing a pro se complaint, the court will "apply the relevant legal principle even when the complaint has failed to name it."  <u>See</u> <u>Mala</u>, 704 F.3d at 244.  However, pro se litigants "'cannot flout procedural rules—they must abide by the same rules that apply to all other litigants.'"  <u>See</u> <u>Vogt</u>, 8 F.4th at 185 (quoting <u>Mala</u>, 704 F.3d at 245).

**B.     Section 1983**

Section 1983 is the statutory vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials.  <u>See</u> 42 U.S.C. § 1983. This statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

<u>See id.</u>  "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors."  <u>See</u> <u>Pappas v. City of Lebanon</u>, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting <u>Gonzaga Univ. v. Doe</u>, 536 U.S. 273, 284–85 (2002)).  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988).

### C.      Motions to Appoint Counsel for Indigent Plaintiffs in Civil Cases

Pro se plaintiffs have no constitutional or statutory right to the appointment of counsel; nevertheless, district courts have broad discretionary power to request appointed counsel for such litigants who cannot afford counsel.  See 28 U.S.C. § 1915(e)(1) ("The court may request an attorney to represent any person unable to afford counsel."); Montgomery v. Pinchak, 294 F.3d 492, 498 (3d Cir. 2002) (citations omitted).  District courts follow a two (2)-step process when deciding whether to request appointed counsel to represent an indigent civil litigant.  See Houser v. Folino, 927 F.3d 693, 697 (3d Cir. 2019).  First, as a threshold inquiry, the court must consider whether the plaintiff's case has some arguable merit in fact and law.  See Montgomery, 294 F.3d at 498–99 (citations omitted).  Second, if the Court determines that the plaintiff's case has some arguable merit in fact and law, then the court is to consider other factors, including: (1) their ability to present their own case; (2) the complexity of the legal issues; (3) the degree to which factual investigation will be required and their ability to pursue such an investigation; (4) the extent to which the case is likely to turn on credibility determinations; (5) whether expert testimony will be required; and (6) whether they can retain and afford counsel.  See Houser, 927 F.3d at 697 (citations omitted).  This list, however, "is not meant to be exhaustive."  See Tabron v. Grace, 6 F.3d 147, 157 (3d Cir. 1993); see also Houser, 927 F.3d at 700 (stating that "[w]e have always emphasized that [these] factors are only a guidepost for district courts in their exercise of the broad statutory discretion granted to them by Congress[,]" and that "[t]hey are not exhaustive, nor are they each always essential").  Rather, the court must determine on a case-by-case basis whether a request for appointed counsel is warranted.  See Tabron, 6 F.3d at 157–58.

## III.    DISCUSSION

### A.    Gary's Motion to Correct or Amend the Docket

Gary moves to correct the docket and essentially amend Aycock's complaint to reflect the proper spelling of their name.  See (Doc. No. 26 at 1–2).  Apparently, Aycock's reference to "Nurse Gary" in his complaint actually refers to "Nurse G. Gregory."  See (id. at 1).  The Court will grant this motion and direct the Clerk of Court to correct the docket, so it reflects the proper spelling of this Defendant's name.  However, for purposes of this Memorandum and the accompanying Order only, the Court will continue to refer to this Defendant as "Gary."

### B.    The Wellpath Defendants' Motion to Dismiss under Rule 41(b)

The Wellpath Defendants move under Rule 41(b)[4] to dismiss Aycock's state-law professional negligence claims against them because he has not filed COMs as required by Pennsylvania Rule of Civil Procedure 1042.3, and they previously provided Aycock with notice of their intent to seek judgment of non pros due to his failure to file COMs.[5]  See (Doc. No. 22 at

---

[4]  Rule 41(b) provides that "[i]f the plaintiff fails to prosecute or to comply with the [Federal Rules of Civil Procedure] or a court order, a defendant may move to dismiss the action or any claim against it."  See Fed. R. Civ. P. 41(b).

[5]  Pennsylvania Rule of Civil Procedure 1042.3 states in relevant part that:

> (a) In any action based upon an allegation that a licensed professional deviated from an acceptable professional standard, the attorney for the plaintiff, or the plaintiff if not represented, shall file with the complaint or within sixty days after the filing of the complaint, a certificate of merit signed by the attorney or party that either

> (1) an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm, or

5–9).  The Court notes that Aycock has not responded to this motion despite the Court's

November 24, 2025 Order providing him with time to file his response.  <u>See</u> (Doc. No. 23 at 2).

Even though Aycock has not filed COMs to date and did not file a brief in response to the

Wellpath Defendants' motion,[6] the Court must deny the motion.[7]  On January 20, 2026, the

United States Supreme Court, in <u>Berk v. Choy</u>, held that a state's requirement that a plaintiff

asserting a medical malpractice or professional negligence claim "submit an affidavit from a

medical professional attesting to the suit's merit" does not apply in federal court.  <u>See</u> No. 24-

440, 2026 WL 135974, at *2 (U.S. Jan. 20, 2026).  The Supreme Court's reasoning in <u>Berk</u> as

well as <u>Berk</u>'s applicability to professional negligence claims filed in this District, and the Third

Circuit generally, was recently described as follows:

> In <u>Berk</u>, the plaintiff advanced a medical malpractice claim under Delaware law,
> but the district court dismissed it for failure to comply with a provision of Delaware

---

> (2) the claim that the defendant deviated from an acceptable professional standard
> is based solely on allegations that other licensed professionals for whom this
> defendant is responsible deviated from an acceptable professional standard, or

> (3) expert testimony of an appropriate licensed professional is unnecessary for
> prosecution of the claim.

<u>See</u> Pa. R. Civ. P. 1042.3(a)(1)–(3).

[6]  Under this Court's Local Rules, the failure to file a brief opposing a motion will be deemed as
a lack of opposition to the motion.  <u>See</u> M.D. Pa. L.R. 7.6 ("Any party opposing any motion,
other than a motion for summary judgment, shall file a brief in opposition within fourteen (14)
days after service of the movant's brief, or, if a brief in support of the motion is not required
under these rules, within seven (7) days after service of the motion.  Any party who fails to
comply with this rule shall be deemed not to oppose such motion.").

[7]  Based on the phrasing Aycock uses in his complaint, it is unclear whether he intends to assert
professional negligence claims against Defendants.  Nevertheless, considering Aycock's pro se
status, Defendants' interpretation of the complaint as containing professional negligence claims
against them, and the requirement that courts construe pro se pleadings liberally and without
concern for whether the plaintiff has correctly labeled their causes of action, the Court will
construe his complaint as also asserting professional negligence claims against Defendants.

law that, like Rule 1042.3, requires a plaintiff to file a [COM] from a licensed professional attesting to the merits of a malpractice claim.  Id. at *2–3.  The Third Circuit affirmed, holding that the Delaware law was substantive law that needed to be applied by federal courts.  Id. at *3.

The Supreme Court reversed.  The Court first noted that when a provision of the Federal Rules of Civil Procedure governs a particular procedural question, any contrary state rules of procedure are displaced and may not be enforced in federal court.  Id. at *4 (first citing Hanna v. Plumer, 380 U.S. 460, 469–74 (1965); then citing Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393, 398 (2010)).  The Court then held that the relevant Delaware law conflicts with Federal Rule of Civil Procedure 8(a)(2), which "requires only a short and plain statement of the claim" for a complaint to state a claim upon which relief may be granted.  Id. (internal quotation marks omitted) (quoting Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993)).  The Court noted that Rule 8 "sets a ceiling on the information that plaintiffs can be required to provide about the merits of their claims" at the pleading stage.  Id.  The Court held that Delaware's law, by requiring plaintiffs to file a [COM] with a medical malpractice claim, requires more than is required by Rule 8 and therefore conflicts with the rule.  Id.  The [C]ourt therefore held that the law does not apply in federal court.  Id.

Under Berk, Pennsylvania Rule of Civil Procedure 1042.3 plainly cannot apply in federal court.  Just like the Delaware law at issue in Berk, Rule 1042.3 requires a plaintiff in a malpractice or professional negligence claim to file a certificate of merit.  See Pa. R. Civ. P. 1042.3.  By requiring the plaintiff to provide more than a short and plain statement of her claim, the law conflicts with Federal Rule of Civil Procedure 8.  Berk, 2026 WL 135974, at *4.  Thus, the court concludes that Rule 1042.3 no longer applies in federal court and that the Third Circuit's contrary decisions in [Schmigel v. Uchal, 800 F.3d 113, 118 (3d Cir. 2015) and Liggon-Redding v. Estate of Sugarman, 659 F.3d 258, 264-65 (3d Cir. 2011)] have been abrogated by Berk.

See Allen v. Voorstad, No. 25-cv-00106, 2026 WL 184276, at *3 (M.D. Pa. Jan. 23, 2026).

The Court agrees with the reasoning in Allen and concludes that Berk forecloses the application of the COM requirement in Pennsylvania Rule of Civil Procedure 1042.3 to Aycock's professional negligence claims in this case.  Accordingly, the Court will deny the Wellpath Defendants' Rule 41(b) motion to dismiss based on Aycock's failure to file COMs to support his professional negligence claims against them.

11

### C.    The Wellpath Defendants' Rule 12(b)(6) Motion to Dismiss

The Wellpath Defendants move to dismiss Aycock's complaint.  (Doc. Nos. 18, 19.)

They argue that the Court should dismiss Aycock's Eighth Amendment deliberate-indifference-

to-serious medical needs claims against them because he fails to allege sufficient facts to support

a plausible claim or show that he exhausted his administrative remedies.  See (Doc. No. 19 at 8–

9, 13–14).  They also contend that Aycock's professional negligence claims are subject to

dismissal because he failed to file COMs, see (id. at 10–13), and they also seek to have the Court

dismiss without prejudice Aycock's request for punitive damages because he does not allege facts

that could lead to such an award.  See (id. at 14–15).  The Court concludes that the Wellpath

Defendants' arguments for dismissal lack merit and, as such, will deny their motion to dismiss

Aycock's complaint.

### 1.    Aycock's Failure to Submit COMs

The Court has already explained that Aycock does not need to support his professional

negligence claims with COMs after Berk.  Thus, the lack of COMs cannot be a basis for

dismissing Aycock's professional negligence claims.

### 2.    Aycock's Failure to Exhaust His Administrative Remedies

Under the Prison Litigation Reform Act ("PLRA"), a prisoner asserting a Section 1983

claim must fully exhaust their administrative remedies in the prison before raising such a claim

in their complaint.  See 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison

conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in

any jail, prison, or other correctional facility until such administrative remedies as are available

are exhausted.").  However, the law has been well settled for the past approximately past

approximately twenty years that Section 1983 prisoner plaintiffs need not plead administrative

exhaustion in their complaints.  See Jones v. Bock, 549 U.S. 199, 216 (2007) ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."); Small v. Camden County, 728 F.3d 265, 269–70 (3d Cir. 2013) ("Failure to exhaust is an affirmative defense the defendant must plead and prove; it is not a pleading requirement for the prisoner-plaintiff." (citing Jones, 549 U.S. at 212, 216–17 and Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002))); Gongliewski v. Wildenstein, No. 24-cv-01935, 2026 WL 98756, at *14 (M.D. Pa. Jan. 14, 2026) ("[E]xhaustion is not a pleading requirement, but an affirmative defense.").  Therefore, the Court cannot dismiss Aycock's Section 1983 claims because he did not affirmatively plead exhaustion.[8]

---

[8]  The Wellpath Defendants' exhaustion argument does not distinguish between Aycock's Section 1983 and professional negligence claims.  The PLRA's language is clear insofar as its exhaustion requirement applies only to a prisoner's claims under Section 1983 "or any other Federal law." See 42 U.S.C. § 1997e(a); Talley v. Pa. Dep't of Corr., No. 19-cv-01589, 2024 WL 1253626, at *6 n.12 (E.D. Pa. Mar. 21, 2024) ("The DOC Defendants appear to argue that this failure to exhaust bars all of Plaintiff's claims.  But the exhaustion requirement does not sweep so far.  As the plain text of the PLRA makes clear, the exhaustion requirement only applies to claims 'under section 1983 of this title, or any other Federal law.'" (quoting 42 U.S.C. § 1997e(a))); cf. Griffin v. Bryant, 56 F.4th 328, 335 n.6 (4th Cir. 2022) ("By its terms, the PLRA's exhaustion requirement applies not only to claims pursued under § 1983 . . . but also applies to claims initiated under 'any other Federal law,' including Griffin's claim under the ADA and the Rehabilitation Act." (quoting 42 U.S.C. § 1997e(a))).

The Third Circuit Court of Appeals has not squarely addressed whether PLRA exhaustion applies to a prisoner's state-law claims.  See Spencer v. Bush, 543 F. App'x 209, 213 (3d Cir. 2013) (unpublished) (declining to "decide whether state law claims must be exhausted under the PLRA" because the district court "should have declined to exercise supplemental jurisdiction over those claims" upon dismissal of the only federal claims).  Nevertheless, other Judges in this District have concluded that the PLRA's exhaustion requirement does not apply to a prisoner-plaintiff's state-law claims.  See, e.g., Reyan v. Pa. Dep't of Corr., No. 18-cv-01485, 2020 WL 7049535, at *14 (M.D. Pa. Nov. 12, 2020) ("Based on the plain language of the PLRA, the exhaustion requirement does not apply to state law claims." (citation omitted)), report and recommendation adopted, 2020 WL 7048283 (M.D. Pa. Dec. 1, 2020); Douglas v. Joseph, No. 13-cv-01136, 2016 WL 561944, at *5 (M.D. Pa. Feb. 12, 2016) ("Although Douglas is proceeding in federal court, he is pursuing state-law claims.  Thus, section [1997e(a)] does not apply."), aff'd, 656 F. App'x 602 (3d Cir. 2016) (unpublished).  Additionally, it appears that every court of appeals to address this issue has concluded that PLRA exhaustion does not apply

### 3.     Sufficiency of Aycock's Allegations Relating to his Section 1983 Deliberate-Indifference-to-Serious-Medical-Needs Claims

The Wellpath Defendants argue that Aycock's allegations pertaining to their deliberate indifference are insufficient because those allegations show that he "was consistently consulting and receiving medical examinations and treatment with [them, and h]e simply disagrees with the type of treatment he received." See (Doc. No. 19 at 9).[9]  The Court disagrees.

For Aycock to state a plausible constitutional claim based on the failure to provide adequate medical treatment, he must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs.  See Farmer v. Brennan, 511 U.S. 825, 835 (1994).  A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference."  See id. at 837.  A plaintiff properly alleges deliberate indifference "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment."  See Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999); see also Pearson v. Prison Health Serv., 850 F.3d 526, 534 (3d

---

to a prisoner-plaintiff's state-law claims.  See Pierce v. Rowland, No. 20-5731, 2021 WL 3929549, at *6 (6th Cir. Sept. 2, 2021) (unpublished) ("Since the PLRA's exhaustion requirement applies to actions brought under federal law, Pierce's state law claims . . . remain viable." (citation omitted)); McDaniel v. Meisner, 617 F. App'x 553, 556 n.3 (7th Cir. 2015) (unpublished) ("[T]he [PLRA] do not apply to state-law claims.").  Therefore, even if the Court determined that Aycock failed to sufficiently plead exhaustion or exhaust his claims while at SCI Rockview, it would not lead to the dismissal of his state-law professional negligence claims.

[9]  The Wellpath Defendants do not argue that Aycock's allegations show that he had a serious medical need.  See (id.).  As such, the Court will not discuss that component of a deliberate-indifference-to-serious-medical-needs claim here.

Cir. 2017) (explaining that a prisoner-plaintiff can show deliberate indifference where prison official "intentionally den[ied] or delay[ed] access to medical care or intentionally interfer[ed] with the treatment once prescribed" (internal citations and quotation marks omitted)). Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation.  See Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004); see also Estelle, 429 U.S. at 106 (explaining that complaints that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment [as] medical malpractice does not become a constitutional violation merely because the victim is a prisoner"); Hope v. Warden York County Prison, 972 F.3d 310, 330 (3d Cir. 2020) ("Deliberate indifference requires significantly more than negligence."); Montanez v. Price, 154 F.4th 127, 141 (3d Cir. 2025) (pointing out that "disagreement between the prisoner and medical personnel over the proper course of treatment" does not show deliberate indifference (citing Spruill, 372 F.3d at 235)).

Here, the Wellpath Defendants' argument would be more persuasive if Aycock's allegations were limited to the six days he spent in the infirmary.  For the first four of those six days, he received Tramadol, which helped with his pain.  See (Doc. No. 1 at 4).  The medical staff then changed his medication, giving him a muscle relaxer as well as Tylenol and/or Motrin. See (id.).  These allegations show that not only was Aycock receiving constant medical care during the six-day period, but that Aycock merely disagreed with the decision to stop giving him Tramadol for his pain and preferred Tramadol, which is insufficient to show deliberate indifference.  See, e.g., Rokita v. Klinefelter, No. 24-2197, 2025 WL 3172767, at *2 (3d Cir. Nov. 13, 2025) (unpublished) ("Rokita may have preferred a stronger painkiller on that initial

15

visit; however, preference alone cannot establish deliberate indifference." (citing Inmates of
Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979))).  He also does not allege any
facts that the Wellpath Defendants changed necessary medical treatment for a nonmedical reason
or prevented him from receiving needed or recommended medical treatment, which could lead to
a reasonable inference that they were deliberately indifferent.  See Rouse, 182 F.3d at 197.

Aycock's allegations, however, go beyond the six days he spent in the infirmary and
cover an approximately two-month period, i.e., from June 7, 2024, through August 8, 2024.  See
(Doc. No. 1 at 4).  He complains that during this period, the Wellpath Defendants continued to
give him Tylenol and/or Motrin for his shoulder pain despite him constantly complaining of
excruciating pain in his left shoulder and informing them that these medications were ineffective
to alleviate his pain.  Thus, although Aycock appears to disagree with the treatment he received,
his allegations go beyond a mere disagreement.  Instead, he alleges that the Wellpath Defendants
persistently gave him ineffective medicine for approximately two months, and "courts in th[e
Third Circuit] have held that persistent use of an ineffective medicine can constitute deliberate
indifference."  See Tipton v. Schultz, No. 24-cv-00156, 2025 WL 790749, at *11 (W.D. Pa. Feb.
14, 2025) (citing White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990) and Burk v. Crowe, No.
19-cv-05792, 2020 WL 42758, at *3 (E.D. Pa. Jan. 3, 2020)), report and recommendation
adopted, 2025 WL 786489 (W.D. Pa. Mar. 12, 2025); see also White, 897 F.2d at 110 ("What
may state a cause of action is Dr. Napoleon's persistence in using Dilantin, or Dilantin plus
phenobarbital, after Nazario told him that his seizures had increased in violence and
frequency."); Tenon v. Dreibelbis, 606 F. App'x 681, 686 (3d Cir. 2015) (unpublished)
(concluding that the district court erred in dismissing prisoner's deliberate-indifference-to-
serious-medical-needs claim against prison doctor where the prisoner alleged that the doctor

knew that it had been two weeks since the prisoner injured his jaw and the prisoner had asked the doctor for stronger pain medication, because those "allegations that the [doctor] failed to respond to his claims for stronger pain medication for his 'excruciating pain' are sufficiently serious to support an Eighth Amendment claim" (citing Estelle, 429 U.S. at 103)); cf. Johnson v. Montag, No. 22-cv-00186, 2023 WL 5621355, at *2 (W.D. Pa. Aug. 31, 2023) ("Plaintiff points to his allegations that Defendant Montag chose to continue a course of ineffective pain medications for an additional period of two months after he had determined that a root canal was the only way to end Plaintiff's pain and suffering. Such allegations are sufficient to raise the question of whether Defendant Montag chose a 'less efficacious' treatment, which can only be answered through fact discovery."). Moreover, although Aycock's allegations are somewhat unclear on this point, he also alleges that while he was in the RHU, the Wellpath Defendants did not give him medication either prescribed by his doctor from Penn State Medical or, following his visits to see his doctor at Penn State Medical, prescribed from someone else. See (Doc. No. 1 at 4). If true, these allegations could constitute deliberate indifference. See White, 897 F.2d at 109–10 (stating that prison officials are deliberately indifferent to a prisoner's serious medical needs when they "intentionally deny[ ] or delay[ ] medical care or intentionally interf[ere] with the treatment once prescribed" (emphasis omitted) (citing Estelle, 429 U.S. at 104)).

The Court recognizes that because Aycock does not allege that the Wellpath Defendants did not prescribe him any medication for his complaints of pain, they must be given "[d]eference . . . in the diagnosis and treatment" of him, and this Court should "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . [which] remains a question of sound professional judgment." See Palakovic v. Wetzel, 854 F.3d 209, 227–28 (3d Cir. 2017) (quoting Inmates of Allegheny County Jail, 612 F.2d at 762)). In other words,

"[w]here a prisoner has received some amount of medical treatment, it is difficult to establish deliberate indifference, because prison officials are afforded considerable latitude in the diagnosis and treatment of prisoners."  See id. at 227 (citing Durmer v. O'Carroll, 991 F.2d 64, 67 (3d Cir. 1993)); see also Anderson v. Price, No. 22-3058, 2023 WL 5814664, at *2 (3d Cir. Sept. 8, 2023) (unpublished) (affirming dismissal of prisoner's deliberate indifference claims on screening and explaining that "[w]here a prisoner is receiving some amount of medical treatment, [courts] presume that the treatment is adequate absent evidence that it violates professional standards of care" (citing Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990)); Davis v. Superintendent Somerset SCI, 597 F. App'x 42, 45 (3d Cir. 2015) (unpublished) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, 'federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.'" (quoting United States ex rel. Walker v. Fayette County, 599 F.2d 573, 575 n.2 (3d Cir. 1979))).  Nevertheless, this Court is limited to Aycock's allegations in ruling on the Wellpath Defendants' motion to dismiss and, at this stage, he alleges just enough to warrant the Court denying the movants' motion to dismiss his deliberate-indifference-to-serious-medical-needs claims pertaining to medical treatment following his shoulder surgery.[10]  If discovery reveals that Aycock's factual allegations are unfounded, the Wellpath Defendants can challenge his claims against them through a motion for summary judgment.

---

[10]  The Wellpath Defendants do not address Aycock's allegations that they were deliberately indifferent because they recommended that he not receive a bottom bunk cell assignment, which resulted in him being assigned to a top bunk that did not have a ladder, and later resulted in him falling from the top bunk.  See (Doc. No. 1 at 4).  Therefore, the Court will not discuss this claim here.

### 4.     Aycock's Request for Punitive Damages

The Wellpath Defendants move the Court to dismiss Aycock's request for punitive damages in his complaint because they argue that he fails to allege facts that would support such an award.  See (Doc. No. 19 at 14–15).  The Court will also deny this part of their motion.

Punitive damages may be awarded under Section 1983 when "the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."  See Tenon v. Dreibelbis, 190 F. Supp. 3d 412, 418 (M.D. Pa. 2016) (quoting Smith v. Wade, 461 U.S. 30, 56 (1983)).  Because "the standard to show 'deliberate indifference' is substantially the same as the standard to show 'reckless or callous indifference,'" courts have typically held that a claim for punitive damages should survive provided that a plaintiff sets forth a cognizable deliberate indifference claim.  See id. (collecting cases).

Under Pennsylvania law, punitive damages "are proper only in cases where the defendant's conduct is so outrageous as to demonstrate willful, wanton or reckless conduct."  See Hutchison ex rel. Hutchinson v. Luddy, 870 A.2d 766, 770 (Pa. 2005).  To this end, "[t]he state of mind of the actor is vital.  The act, or the failure to act, must be intentional, reckless or malicious."  See Feld v. Merriam, 485 A.2d 742, 748 (Pa. 1984).  Therefore, a punitive damages claim "must establish that (1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that (2) he acted, or failed to act . . . in conscious disregard of that risk."  See Hutchison, 870 A.2d at 772 (citing Martin v. Johns-Manville Corp., 494 A.2d 1088, 1097–98 (Pa. 1985), abrogated on other grounds by Kirkbridge v. Lisbon Contractors, Inc., 555 A.2d 800 (Pa. 1989)).  In making this determination, "[t]he defendant's subjective

appreciation and conscious disregard of the risk of harm can be proved by circumstantial evidence." See Livingston v. Greyhound Lines Inc., 208 A.3d 1122, 1130 (Pa. Super. Ct. 2019).

"[B]ecause the question of whether punitive damages are proper often turns on the defendants' state of mind, [it] frequently cannot be resolved on the pleadings alone but must await the development of a full factual record . . . ." Harvell v. Brumberger, No. 19-cv-02124, 2020 WL 6947693, at *8 (M.D. Pa. Nov. 4, 2020), report and recommendation adopted, 2020 WL 6946575 (M.D. Pa. Nov. 25, 2020). Accordingly, district courts in the Third Circuit generally find allegations of reckless conduct sufficient to state a plausible claim for punitive damages. See Tjokrowidjojo v. San Lucas, No. 20-cv-06564, 2021 WL 1561956, at *2 (E.D. Pa. Apr. 21, 2021) (quoting Harvell, 2020 WL 6947693, at *8) (collecting cases for the proposition that, "[a]s a general rule, the courts have deemed . . . motions to dismiss punitive damages claims to be . . . inappropriate where . . . the complaint alleges reckless conduct").

In this case, the Court has already determined that Aycock has pleaded plausible deliberate-indifference-to-serious-medical-needs claims against the Wellpath Defendants, and they have not challenged the sufficiency of his professional negligence allegations. Accordingly, the Court will deny the Wellpath Defendants' motion to dismiss Aycock's request for punitive damages.

### D.    Gary's Rule 12(b)(6) Motion to Dismiss

Gary moves for dismissal of Aycock's Section 1983 claim based on similar grounds to those argued by the Wellpath Defendants. See (Doc. No. 28 at 3–8).[11] They characterize Aycock's allegations as consisting of only a complaint about Gary continuing to give Tylenol to

---

[11] Gary appears to not construe Aycock's complaint as containing a professional negligence claim against them.

Aycock despite his complaints of extreme pain.  See (id. at 2 n.1).  Based on this

characterization, Gary contends that Aycock fails to state a plausible Section 1983 claim because

his allegations constitute a mere disagreement with his medical treatment, which is insufficient to

show deliberate indifference.  See (id. at 6–8).

      The Court will deny Gary's motion to dismiss for the same reasons stated above in

denying the part of the Wellpath Defendants' motion challenging the sufficiency of Aycock's

allegations of deliberate indifference.  At this stage, the Court construes Aycock's complaint as

alleging that Gary (1) continued to either prescribe or give him Tylenol for his pain despite

Aycock's repeated statements that Tylenol was ineffective to alleviate his extreme pain and (2)

recommended that he not be assigned to a bottom bunk despite his shoulder surgery and extreme

pain.  These allegations are sufficient to state a plausible Section 1983 deliberate-indifference-to-

serious-medical-needs claim against Gary.  Accordingly, the Court will deny Gary's motion to

dismiss.

      **E.**    **Aycock's Motion to Appoint Counsel**

      Aycock moves for the appointment of counsel in this matter.  (Doc. No. 24.)  The Court

will deny this motion without prejudice.  As noted above, Aycock's claims against Defendants

pass the threshold question relating to whether his claims have "some arguable merit in fact and

law."  See Montgomery, 294 F.3d at 498–99.  Nevertheless, after looking at and balancing the

applicable Tabron factors, the Court finds that the appointment of counsel is unwarranted at this

time.  Aycock has demonstrated an ability to present his claims, as shown by his responses to

Defendants' Rule 12(b)(6) motions to dismiss.  In addition, the legal issues pertaining to his

claims are not complex, it does not appear that an extensive factual investigation is required in

this case, it is unclear whether expert testimony will be required, and it does not appear that this

case will be dependent on credibility determinations. Therefore, although it appears that Aycock is unable to afford private counsel, the above factors, on balance, do not support appointing counsel for Aycock. Therefore, the Court will deny his motion to appoint counsel.[12]

## IV.    CONCLUSION

For the reasons stated above, the Court will: (1) grant Gary's motion to correct or amend the docket to reflect the proper spelling of their name; (2) deny Defendants' separately filed motions to dismiss; (3) deny without prejudice Aycock's motion to appoint counsel; (4) and establish deadlines for (a) Aycock to identify any Doe Defendants, (b) Defendants to file their answers to his complaint, (c) the parties to engage in discovery, and (d) the filing of dispositive motions. An appropriate Order follows.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania

---

[12] This denial will be without prejudice. See Tabron, 6 F.3d at 156–57 ("[A]ppointment of counsel under § 1915(d) may be made at any point in the litigation and may be made by the district court sua sponte . . . even if it does not appear until trial (or immediately before trial) that an indigent litigant is not capable of trying his or her case, the district court should consider appointment of counsel at that point."). If future proceedings demonstrate the need for counsel, the matter of whether counsel should be appointed may be reconsidered either sua sponte or upon Aycock's motion.