**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RICHARD HUSTON AYCOCK,** | : | |
| **Plaintiff** | : | **No. 1:24-cv-02126** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **DR. MALHI, et al.,** | : | |
| **Defendants** | : | |

## MEMORANDUM

Currently before the Court are: (1) Defendant G. Gregory ("Gregory")'s motion for reconsideration of the Court's February 5, 2026 Memorandum and Order which, inter alia, denied his motion to dismiss pro se Plaintiff Richard Huston Aycock ("Aycock")'s complaint pursuant to Federal Rule of Civil Procedure 12(b)(6); (2) Gregory's motion for an extension of time to file an answer to Aycock's complaint; (3) Defendants Dr. Radjinder Malhi, Dr. Kansky Delisma, and Larcynina Bitner (collectively, the "Wellpath Defendants")'s motion to compel discovery;[1] and (4) Aycock's motion for a protective order. In addition, the Wellpath Defendants filed a motion for summary judgment and an amended motion for summary judgment, as well as briefs in support of each motion. For the reasons stated below, the Court will: (1) grant the part of Gregory's motion for reconsideration to the extent he asserts that the Court misconstrued Aycock's complaint to include an allegation that he made "repeated" statements about the ineffectiveness of the Tylenol he received to treat his pain; (2) deny Gregory's motion for reconsideration in all other respects, including to the extent he seeks reconsideration of the denial of his motion to dismiss; (3) grant Gregory's motion for an extension of time to file his answer to

[1] Aycock uses incomplete names to identify these Defendants in his complaint. See (Doc. No. 1 at 1–3). The Court will use the Defendants' full names as noted in their submissions and direct the Clerk of Court to modify their names on the docket.

Aycock's complaint and provide him with a fourteen-day period to file his answer; (4) direct Gregory's counsel to file a written report on the status of discovery between him and Aycock; (5) grant the Wellpath Defendants' motion to compel discovery, reopen discovery for a period of sixty days, and direct Aycock to submit complete responses to their written discovery requests; (6) deem withdrawn Aycock's motion for a protective order; (7) deny as moot the Wellpath Defendants' original motion for summary judgment due to their filing of an amended motion; and (8) deny the Wellpath Defendants' amended motion for summary judgment without prejudice to them filing a new motion once the reopened discovery period concludes.

## I. BACKGROUND[2]

Aycock, a convicted and sentenced state prisoner who is proceeding in forma pauperis, commenced this action by filing a complaint, which the Clerk of Court docketed on December 11, 2024. (Doc. Nos. 1, 7.) Aycock names the following Defendants, all of whom allegedly worked at Pennsylvania State Correctional Institution Rockview ("SCI Rockview"), in his complaint: (1) Drs. Malhi and Delisma; (2) "DAA" L. Bitner ("Bitner"); and (3) nurses Gregory[3] and John Doe ("Doe"). See (Doc. No. 1 at 1, 3). Aycock asserts claims for monetary damages under 42 U.S.C. § 1983 against Defendants for deliberate indifference to his serious medical needs in violation of the Eighth Amendment to the United States Constitution. See (id. at 5).

---

[2] The Court limits this recitation of the background in this case to those portions of the record relevant to Gregory's motion for reconsideration.

[3] Aycock mistakenly identifies this Defendant as "Nurse Gary" in his complaint. See (Doc. No. 1 at 1, 3). The Clerk of Court has modified the docket to reflect Defendant's proper name.

Aycock's factual allegations relate to events that occurred at SCI Rockview from June 7, 2024, which followed his shoulder surgery at Penn State Medical, until August 8, 2024. See (id. at 4). Those factual allegations are as follows:

> I was giving [sic] no proper treatment after surgery. I went through extreme and crucial pain in shoulder [sic], chest, and heart, and was only prescribe [sic] Motrin and [T]ylenol, which didnt [sic] help at all. During my six day [sic] stay in the infirmary I [sic] was giving [sic] [T]ramadol for only three to four days which worked but [sic] I was taken off medication and giving [sic] muscle relaxer and [T]ylenol and [M]otrin again and [sic] I was back to extreme and crucial pain in body [sic]. Dr. Mahli and Dr. Delisma ignored my plea for help and left it up to the nurses to prescribe me medication and nurse [sic] or DAA . . . Bitner and Nurse G[regory] and [Doe] ignored my pain and continued giving me [T]ylenol. After my [d]octor trips to Penn State Medical, I was prescribed medications while in RHU [sic] and was never given pain medication and needed to have my counselor email medical to receive medication. I actually dropped from the top bunk and had to be moved to a different cell because my cellmate was old and had the bottom bunk and bunk [sic] had no ladder and [sic] further injured shoulder [sic], [b]ecause of Doctor's and Nurse's recommendations.

See (id.). Aycock alleges that, due to these actions, his "left shoulder was subject to more injury because healing [sic] process was altered due to medical treatment not [sic] proper," and he "was in extreme pain and crucial [sic] throughout process [sic] of healing." See (id.).

Gregory filed a motion to dismiss Aycock's Eighth Amendment claims against him in the complaint pursuant to Rule 12(b)(6), along with a supporting brief, on December 8, 2025. (Doc. Nos. 27, 28.) Gregory argued that the Court should dismiss Aycock's claims because he admits in his complaint that he received pain medication and merely disagreed with the care he received. See (Doc. No. 28 at 4–7). The remainder of Gregory's argument in support of dismissal was as follows:

> Additionally, [Aycock] does not establish sufficient averments to purportedly establish that Defendant Gregory denied or delay any of his care. (See gen. [sic] id.) [sic] So, he fails to establish the requisite deliberate indifference to care in this manner, too.

> In sum, [Aycock], therefore, failed to state an Eighth Amendment claim for deliberate indifference to his medical care as against Defendant Gregory; as such, [Aycock's] Eighth Amendment claim should be dismissed with prejudice.

See (id. at 7–8).

On February 5, 2026, the Court issued a Memorandum and Order which, inter alia, denied Gregory's motion to dismiss and directed him to file an answer to Aycock's complaint. See (Doc. Nos. 30 at 20–22; 31 at 2). The Court stated its reasons for denying Gregory's motion as follows:

> The Court will deny [Gregory]'s motion to dismiss for the same reasons stated above in denying the part of the Wellpath Defendants' motion challenging the sufficiency of Aycock's allegations of deliberate indifference. At this stage, the Court construes Aycock's complaint as alleging that [Gregory] (1) continued to either prescribe or give him Tylenol for his pain despite Aycock's repeated statements that Tylenol was ineffective to alleviate his extreme pain and (2) recommended that he not be assigned to a bottom bunk despite his shoulder surgery and extreme pain. These allegations are sufficient to state a plausible Section 1983 deliberate-indifference-to-serious-medical-needs claim against [Gregory]. Accordingly, the Court will deny [Gregory]'s motion to dismiss.

See (Doc. No. 31 at 21).[4]

---

[4] The Wellpath Defendants also filed a Rule 12(b)(6) motion to dismiss based in part on their argument that Aycock's allegations did not rise to the level of deliberate indifference because he merely disagreed with his medical treatment. See (Doc. No. 19 at 9). The Court denied this part of their motion, explaining in pertinent part that:

> [A]lthough Aycock appears to disagree with the treatment he received, his allegations go beyond a mere disagreement. Instead, he alleges that the Wellpath Defendants persistently gave him ineffective medicine for approximately two months, and "courts in th[e Third Circuit] have held that persistent use of an ineffective medicine can constitute deliberate indifference." See Tipton v. Schultz, No. 24-cv-00156, 2025 WL 790749, at *11 (W.D. Pa. Feb. 14, 2025) (citing White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990) and Burk v. Crowe, No. 19-cv-05792, 2020 WL 42758, at *3 (E.D. Pa. Jan. 3, 2020)), report and recommendation adopted, 2025 WL 786489 (W.D. Pa. Mar. 12, 2025); see also White, 897 F.2d at 110 ("What may state a cause of action is Dr. Napoleon's persistence in using Dilantin, or Dilantin plus phenobarbital, after Nazario told him that his seizures had increased in violence and frequency."); Tenon v. Dreibelbis, 606 F. App'x 681, 686 (3d Cir. 2015) (unpublished) (concluding that the district court erred in dismissing

On February 19, 2026, Gregory filed the instant motion for reconsideration along with a supporting brief. (Doc. Nos. 33, 34.) He also filed a motion seeking an extension of time to file his answer to Aycock's complaint. (Doc. No. 36.) Both motions are ripe for disposition. See M.D. Pa. 7.6 (establishing fourteen-day period for filing briefs in opposition to motions other than motions for summary judgment).

Since the filing of Gregory's motions, the parties have engaged in discovery. See (Doc. No. 31 at 2 (establishing discovery deadline of May 6, 2026, and dispositive motions deadline of June 5, 2026)). On May 6, 2026, the Wellpath Defendants filed a motion to compel Aycock to provide more complete answers to their interrogatories and a response to their requests for production of documents, as well as a supporting brief and

---

> prisoner's deliberate-indifference-to-serious-medical-needs claim against prison doctor where the prisoner alleged that the doctor knew that it had been two weeks since the prisoner injured his jaw and the prisoner had asked the doctor for stronger pain medication, because those "allegations that the [doctor] failed to respond to his claims for stronger pain medication for his 'excruciating pain' are sufficiently serious to support an Eighth Amendment claim" (citing Estelle, 429 U.S. at 103)); cf. Johnson v. Montag, No. 22-cv-00186, 2023 WL 5621355, at *2 (W.D. Pa. Aug. 31, 2023) ("Plaintiff points to his allegations that Defendant Montag chose to continue a course of ineffective pain medications for an additional period of two months after he had determined that a root canal was the only way to end Plaintiff's pain and suffering. Such allegations are sufficient to raise the question of whether Defendant Montag chose a 'less efficacious' treatment, which can only be answered through fact discovery.").
>
> . . .
>
> [T]his Court is limited to Aycock's allegations in ruling on the Wellpath Defendants' motion to dismiss and, at this stage, he alleges just enough to warrant the Court denying [their] motion to dismiss his deliberate-indifference-to-serious-medical-needs claims pertaining to medical treatment following his shoulder surgery. If discovery reveals that Aycock's factual allegations are unfounded, the Wellpath Defendants can challenge his claims against them through a motion for summary judgment.

See (id. at 16–18).

separately filed exhibits. (Doc. Nos. 37–39). On May 22, 2026, Aycock filed a motion for a protective order (Doc. No. 40); however, he never filed a brief in support of his motion. These discovery motions are also ripe for disposition.

In addition to the above motions, the Wellpath Defendants filed a motion for summary judgment and supporting brief on June 5, 2026. (Doc. Nos. 41, 42.) Three days later, the Wellpath Defendants filed an amended motion for summary judgment and supporting brief. (Doc. Nos. 43, 44.) Aycock filed a brief in opposition to the Wellpath Defendants' amended motion for summary judgment on June 25, 2026. (Doc. No. 45.)

## II. LEGAL STANDARDS

### A. Motions for Reconsideration

Motions for reconsideration are typically governed by Federal Rules of Civil Procedure 59(e) and 60(b). See, e.g., Knopick v. Downey, 963 F. Supp. 2d 378, 387 (M.D. Pa. 2013) (noting that "[a] motion for reconsideration may be viewed and considered under either Rule 59(e) or 60(b)" (citations omitted)). A district court may reconsider a judgment under Rule 59(e) if "the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence [that was not previously available]; or (3) the need to correct a clear error of law or prevent manifest injustice." See Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999) (citation omitted).

These limited, permissible grounds for Rule 59(e) relief illustrate that "[t]he purpose of a motion for reconsideration is 'to correct manifest errors of law or fact or to present newly discovered evidence.'" See Lazaridis v. Wehmer, 591 F.3d 666, 669 (3d Cir. 2010) (unpublished) (quoting Max's Seafood Café, 176 F.3d at 677). It is not to allow a disgruntled litigant to:

> "request that the Court simply rethink a decision it has already made." Douris v. Schweiker, 229 F. Supp. 2d 391, 408 (E.D. Pa. 2002). In such a motion, "parties are not free to relitigate issues that the Court has already decided." United States v. Jasin, 292 F. Supp. 2d 670, 676 (E.D. Pa. 2003) (internal citation and quotations omitted). "The standard for granting a motion for reconsideration is a stringent one . . . . [A] mere disagreement with the court does not translate into a clear error of law." Mpala v. Smith, CIV. 3:CV–06–841, 2007 WL 136750, *2 (M.D. Pa. Jan. 16, 2007) (Kosik, J.)[,] *aff'd*, 241 F. App'x 3 (3d Cir. 2007). "Because federal courts have a strong interest in the finality of judgments, motions for reconsideration should be granted sparingly." Cont'l Cas. Co. v. Diversified Indus., Inc., 884 F. Supp. 937, 943 (E.D. Pa. 1995).

See Chesapeake Appalachia, L.L.C. v. Scout Petroleum, LLC, 73 F. Supp. 3d 488, 491 (M.D. Pa. 2014), aff'd sub nom. Chesapeake Appalachia, LLC v. Scout Petroleum, LLC, 809 F.3d 746 (3d Cir. 2016).

Like a Rule 59(e) motion for reconsideration, a motion for reconsideration under Rule 60(b) is narrow in scope, and must rely on at least one of the six (6) grounds enumerated in the Rule "to . . . relieve [the moving] party . . . from a final judgment, order, or proceeding":

> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

See Fed. R. Civ. P. 60(b)(1)–(6). "Importantly, a Rule 60(b) motion may not be used as a substitute for an appeal, and legal error, without more, does not warrant relief under that

provision." Knopick, 963 F. Supp. 2d at 388 (citing Selkridge v. United of Omaha Life Ins. Co., 360 F.3d 155, 173 (3d Cir. 2004)).

Although Rules 59(e) and 60(b) generally govern motions for reconsideration, they are inapplicable here because Rule 59(e) applies only to a "judgment," see Fed. R. Civ. P. 59(e) ("A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." (emphasis added)), and Rule 60(b) applies only to any "final judgment, order or proceeding." See Fed. R. Civ. P. 60(b) (emphasis added); see also Torres v. Chater, 125 F.3d 166, 168 (3d Cir. 1997) (explaining that Rule 60(b) "applies only to 'final' judgments and orders"). The Court's Order denying Gregory's motion to dismiss is neither a judgment nor a final order; instead, it is an interlocutory order. See Bell Atlantic-Pennsylvania, Inc. v. Pa. Pub. Util. Comm'n, 273 F.3d 337, 343 (3d Cir. 2001) ("The denial of a motion to dismiss does not end the litigation and ordinarily is not a final order."). Motions for reconsideration of interlocutory orders are governed by Federal Rule of Civil Procedure 54(b). See Qazizadeh v. Pinnacle Health Sys., 214 F. Supp. 3d 292, 295 (M.D. Pa. 2016) ("[M]otions for reconsideration of interlocutory orders—whether denials of summary judgment, grants of partial summary judgment, or any other non-final orders—are motions under Federal Rule of Civil Procedure 54(b)."). Therefore, the Court is not limited by the standards applicable to motions for reconsideration under Rules 59(e) and 60(b) in reviewing Gregory's motion. See id. (explaining that reconsideration of interlocutory orders "may be had even if the movant cannot show an intervening change in controlling law, the availability of new evidence that was not available when the court issued the underlying order, or 'the need to correct a clear error of law or fact or to prevent manifest injustice'" (quoting Max's Seafood Café, 176 F.3d at 677)). "Instead, the court may permit

reconsideration whenever 'consonant with justice to do so.'" Id. (quoting St. Mary's Area Water Auth. v. St. Paul Fire & Marine Ins. Co., 472 F.Supp.2d 630, 632 (M.D. Pa. 2007)).

When determining whether reconsideration of an interlocutory order under Rule 54(b) is appropriate, the Court is mindful of:

> the need for finality of judgments and preservation of judicial resources. [As such, b]efore entertaining a motion for reconsideration of an interlocutory order, the movant must still establish good cause for why the court should revisit its prior decision. See Confer v. Custom Eng'g Co. Emp. Health Benefit Plan, 760 F. Supp. 75, 77 (W.D. Pa. 1991). Moreover, whether involving a final or interlocutory order, a motion for reconsideration is "not to be used as a means to reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement between the Court and the litigant." Ogden v. Keystone Residence, 226 F. Supp. 2d 588, 606 (M.D. Pa. 2002) (citation omitted). A reconsideration motion should not be used to try to get a "second bite at the apple," Kropa v. Cabot Oil & Gas Corp., 716 F. Supp. 2d 375, 378 (M.D. Pa. 2010), or to raise new arguments or evidence that could have been proffered prior to the issuance of the order in question, McDowell Oil Serv., Inc. v. Interstate Fire & Cas. Co., 817 F. Supp. 538, 541 (M.D. Pa. 1993).

See id. at 295–96.

**B. Motions for Extensions of Time**

If a party moves for an extension of time "before the original time or its extension expires," the Court can grant the motion if the party shows "good cause" for the requested extension. See Fed. R. Civ. P. 6(b)(1)(A). "The good cause standard requires the 'party seeking relief to show that the deadlines [could not] reasonably be met despite the diligence of the party needing the extension.'" See Villegas v. City of El Paso, No. 15-cv-00386, 2026 WL 301073, at *10 (W.D. Tex. Jan. 28, 2026) (quoting S & W Enters., L.L.C. v. Sw. Bank of Ala., 315 F.3d 533, 535 (5th Cir. 2003)).

### C. Motions to Compel Discovery

"[T]he scope of discovery under the Federal Rules [of Civil Procedure] is unquestionably broad . . . ." Bayer AG v. Betachem, Inc., 173 F.3d 188, 191 (3d Cir. 1999). The Federal Rules provide that parties may obtain discovery of:

> any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

See Fed. R. Civ. P. 26(b)(1).

Although the scope of discovery is broad, the Court, upon motion by the parties or on its own:

> must limit the frequency or extent of discovery otherwise allowed if it determines that:
>
> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

See Fed. R. Civ. P. 26(b)(2)(C). In deciding to impose discovery limitations under the Federal Rules, "courts should bear in mind the purpose of discovery—to 'make a trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent,' and 'narrow and clarify the basic issues between the parties.'" Colbert v. Allstate Prop. & Cas. Ins. Co., No. 20-cv-01066, 2023 WL 2838114, at *2 (M.D. Pa. Apr. 7,

2023) (footnotes omitted) (quoting United States v. Proctor & Gamble Co., 356 U.S. 677, 682 (1958) and Hickman v. Taylor, 329 U.S. 495, 501 (1947)).

The Federal Rules permit parties to serve interrogatories and requests for production of documents on their adversaries. See Fed. R. Civ. P. 33, 34. As for interrogatories, a party may serve up to twenty-five written interrogatories (including all discrete subparts) on any other party, with those interrogatories "relat[ing] to any matter that may be inquired into under Rule 26(b)." See Fed. R. Civ. P. 33(a)(1)–(2). "The responding party must serve its answers and any objections within [thirty] days after being served with the interrogatories[,]" unless a court orders, or the parties stipulate to, a different period. See Fed. R. Civ. P. 33(b)(2). If the responding party objects to an interrogatory, they must state their objection "with specificity," and "[a]ny ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." See Fed. R. Civ. P. 33(b)(4).

Concerning requests for production of documents, "[a] party may serve on any other party a request within the scope of Rule 26(b) . . . to produce and permit the requesting party or its representative to inspect, copy, test, or sample [documents] in the responding party's possession, custody or control." See Fed. R. Civ. P. 34(a)(1). As with interrogatories, the responding party generally has thirty days after being served with the request to respond to each "item or category" in the request, unless a court orders, or the parties stipulate to, a different period. See Fed. R. Civ. P. 34(b)(2)(A)–(B). If the responding party objects to a request, they "must state whether any responsive materials are being withheld on the basis of that objection," and if they object to only part of a request, they "must specify the part and permit inspection of the rest." See Fed. R. Civ. P. 34(b)(2)(C). Additionally, a "responding party is not obliged to

produce documents that it does not possess or cannot obtain." See Corradi v. N.J. Parole Bd., No. 16-cv-05076, 2019 WL 1795545, at *1 (D.N.J. Apr. 29, 2019).

The Federal Rules permit a party to "move for an order compelling disclosure or discovery" if they include with the motion "a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." See Fed. R. Civ. P. 37(a)(1). A party may file a motion to compel if, inter alia, "a party fails to answer an interrogatory submitted under Rule 33" or "a party fails to produce documents[,] fails to respond that inspection[,] or fails to permit inspection-as requested under Rule 34." See Fed. R. Civ. P. 37(a)(3)(B)(iii), (iv).

The party seeking to compel discovery has the initial burden to establish that the requested discovery materials are relevant to the case. See Fassett v. Sears Hldg. Corp., 319 F.R.D. 143, 149 (M.D. Pa. 2017) ("The party seeking the discovery has the burden of clearly showing the relevancy of the information sought." (quoting Caver v. City of Trenton, 192 F.R.D. 154, 159 (D.N.J. 2000))); McConnell v. Canadian Pac. Realty Co., 280 F.R.D. 188, 193 (M.D. Pa. 2011) ("A party seeking discovery bears the initial burden of proving the relevance of the requested information." (citing Morrison v. Philadelphia Housing Auth., 203 F.R.D. 195, 196 (E.D. Pa. 2001))). If the moving party satisfies this initial burden:

> "the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure."

See McConnell, 280 F.R.D. at 193 (quoting In re Urethane Antitrust Litig., 261 F.R.D. 570, 573 (D. Kan. 2009)); see also Colbert, 2023 WL 2838114, at *3 (explaining that if the party moving to compel discovery meets its initial burden, "the resisting party can oppose by showing that the

material requested is not relevant under Rule 26 or that the burdens of production outweigh the 'ordinary presumption' in favor of disclosure" (citing First Niagara Risk Mgmt., Inc. v. Folino, 317 F.R.D. 23, 25 (E.D. Pa. 2016))).

## III. DISCUSSION

### A. Gregory's Motion for Reconsideration

#### 1. Gregory's Arguments

In seeking reconsideration, Gregory challenges the Court's liberal construction of Aycock's complaint to allege that Gregory "(1) continued to either prescribe or give him Tylenol for his pain despite Aycock's repeated statements that Tylenol was ineffective to alleviate his extreme pain and (2) recommended that he not be assigned to a bottom bunk despite his shoulder surgery and extreme pain." See (Doc. No. 34 at 7 (quoting Doc. No. 30 at 21)). He asserts that the Court, in so construing the complaint, included "additional, non-existent fact allegations . . . that simply are not within the four corners of said complaint" and "manufacture[d] claims by imagining that un-pleaded, missing facts exist within the operative complaint." See (id.).

Gregory argues that there are three legal principles this Court should have applied when reviewing Aycock's complaint. First, he notes that "[w]hen liberally construing pro se pleadings, district courts 'pay[] attention to what the litigant has alleged and us[e] common sense," and are "not supplying what [a pro se] plaintiff has not alleged or imagining that unpleaded facts exist." See (id. (alterations in original) (quoting Tufano v. Fenix Internet, LLC, No. 24-cv-01115, 2024 WL 4783840, at *2 (M.D. Pa. Oct. 29, 2024))). Second, he points out that Federal Rule of Civil Procedure 8 requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," see (id. at 8 (quoting Fed. R. Civ. P. 8(a)(2))), and that this requirement allows district courts to quickly weed out frivolous

claims and provides the defendant with adequate notice of the plaintiff's claim(s) against them. See (id. (citing Hynson by and through Hynson v. City of Chester Legal Dep't, 864 F.2d 1026, 1031 n.13 (3d Cir. 1988))). Third, he indicates that when asserting a Section 1983 claim against a defendant, the plaintiff's allegations must show the defendant's personal involvement in the alleged constitutional violation. See (id. at 8 (citing Millbrook v. U.S., 8 F. Supp. 3d 601, 613 (M.D. Pa. 2014))).

With these legal principles in mind, Gregory contends that the Court erred by construing Aycock's allegation that "Nurse or DAA L. Bitner and Nurse [Gregory] and [Doe] ignored my pain and continued giving me [T]ylenol" as an allegation that Aycock told Gregory that Tylenol was insufficient and repeatedly ignored him. See (id. at 9). Gregory argues that the Court also erred by construing Aycock's use of the word "Nurse's" when alleging that he was on a top bunk "because of Doctor's and Nurse's recommendations" referenced Gregory because Aycock "showed that he knew how, could, and did make a specific allegation regarding Gregory so if this unidentified Nurse was Gregory[, Aycock] would have just said that." See (id. at 10–11 (quoting Doc. No. 1 at 4)). Thus, according to Gregory, Aycock's reference to "Nurse's" was a reference to Doe instead of Gregory. See (id. at 11).

In addition to the above, Gregory asserts that Aycock's complaint lacks the following allegations:

> - [Aycock] repeatedly complained to Gregory that Tylenol was ineffective to alleviate extreme pain;
>
> - how many times [Aycock] allegedly saw Gregory;
>
> - how many times [Aycock] allegedly told Gregory that Tylenol was purportedly ineffective to meet his pain levels;
>
> - Gregory allegedly withheld medication from [Aycock] or somehow prevented him from receiving medication;

> - Gregory, as a nurse and not a doctor, allegedly could have or refused to prescribe other medications;
>
> - Gregory allegedly knew that [Aycock] had a top bunk designation;
>
> - Gregory allegedly recommended that [Aycock] not be assigned to a bottom bunk designation;
>
> - Gregory, as a nurse and not a doctor, could have provided [Aycock] with a bottom bunk designation;
>
> - Gregory, as a nurse and not a doctor, allegedly refused to provide [Aycock] with a bottom bunk designation; and
>
> - Gregory allegedly knew that [Aycock] fell from a top bunk and injured his shoulder.

See (id. at 9–10). He further asserts that Aycock never indicated in his brief opposing Gregory's motion to dismiss that "Gregory continued to either prescribe or give him Tylenol for his pain despite Plaintiff's repeated statements that Tylenol was ineffective to alleviate his extreme pain and/or recommended that he not be assigned to a bottom bunk despite his shoulder surgery and extreme pain." See (id. at 11 (citing Doc. No. 29)). "Instead, [he states that] this Court built those oppositional arguments for him," which is "improper because district courts do not have the duty or the ability to add arguments that a plaintiff did not present." See (id. (citing Mala v. Crown Bay Marina, Inc., 704 F3d 239, 244 (3d Cir. 2013) and Simmons v. Gilmore, No. 17-cv-00996, 2021 WL 1215773, at *5 (W.D. Pa. Mar. 31, 2021))).

**2. Analysis**

Before addressing the merits of Gregory's motion, the Court is compelled to address the tone and content of defense counsel's arguments in support of the motion. This Court will grant reconsideration of a decision if warranted under the facts and applicable law, see, e.g., Woolley v. Groft, No. 20-cv-01887, 2021 WL 1578249, at *2, 4 (M.D. Pa. Apr. 22, 2021) (granting

plaintiff's motion for reconsideration and allowing him to amend his complaint); however, when requesting that a court reconsider a decision, counsel is reminded that the duty of zealous advocacy on behalf of a client is not without limits.

Accusations that the Court "imagined," and even "manufacture[d]," claims on Aycock's behalf, see (Doc. No. 34 at 7), and that the Court "built . . . oppositional arguments for him," well exceed those limits. See (id. at 11).[5] While it is entirely proper for counsel to reference cases that caution district courts not to "imagin[e] that unpleaded facts exist" when liberally construing a pro se plaintiff's complaint, see, e.g., (Doc. No. 34 at 7 (quoting Tufano, 2024 WL 4783840, at *2)), an allegation that a judicial officer intentionally created factual allegations and legal arguments in order to dictate a result, is another matter entirely. Counsel is admonished to adhere to the Code of Professional Conduct for all future filings. See M.D. Pa. L.R. 83.23.2 & Appx. C.

[5] The term "manufacture," when used in this context, means: (1) "to invent something, such as an excuse or story, in order to deceive someone," see Manufacture, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/manufacture (last visited Aug. 7, 2026); (2) to "make up something artificial or untrue," see Manufacture, Vocabulary.com, https://www.vocabulary.com/dictionary/manufacture (last visited Aug. 7, 2026); or (3) "to create (something, such as a false story or explanation) by using your imagination often in order to trick or deceive someone," see Manufacture, The Britannica Dictionary, https://www.britannica.com/dictionary/manufacture (last visited Aug. 20, 2026). Additionally, "[i]f you say that someone manufactures information, you are criticizing them because they invent information that is not true." See Manufacture, Collins Dictionary, https://www.collinsdictionary.com/us/dictionary/english/manufacture (last visited Aug. 20, 2026). As for the term "imagine," in the context defense counsel uses it, it can mean: (1) "to form a mental image of (something not present)," see Imagine, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/imagine (last visited Aug. 20, 2026); (2) "to think that something exists or is true, although in fact it is not real or true," see Imagine, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/imagine (last visited Aug. 20, 2026); and (3) "to think of or create (something that is not real) in your mind," see Imagine, The Britannica Dictionary, https://www.britannica.com/dictionary/imagine (last visited Aug. 20, 2026).

On reconsideration, the Court agrees with Gregory that the term "repeated" overstates Aycock's allegation that Gregory "continued to prescribe or give him Tylenol for his pain despite Aycock's repeated statements that Tylenol was ineffective to alleviate his extreme pain." See (Doc. No. 30 at 21 (emphasis added)). However, because the remainder of Gregory's arguments lack merit, the Court finds no basis for reconsidering the denial of his motion to dismiss Aycock's complaint.

Although Gregory contends that Aycock does not allege that he told Gregory that Tylenol was insufficient, see (Doc. No. 34 at 9), the Court continues to find that this fact is reasonably inferable from Aycock's allegation that Gregory "ignored my pain" by "continu[ing] to give [him T]ylenol" The Court construes Aycock's allegation that his pain was ignored to mean that Aycock told Gregory and the other medical professionals identified in his complaint that he was in pain. In addition, Aycock alleges that they gave or prescribed him Tylenol. Thus, if Aycock is being given Tylenol and yet reporting to Gregory (and anyone else) that he is still in pain, it is reasonably inferable that Aycock is effectively informing the medical staff that the Tylenol is ineffective to treat his pain.

As for Gregory's argument that Aycock does not allege that Gregory recommended that Aycock not be placed in a bottom bunk, it also lacks merit. Gregory understandably devotes significant attention to Aycock's use of the word "Nurse," in his complaint, and he asserts that Aycock's use of the word "Nurse" refers to Doe instead of him. See (id. at 10–11). Although Aycock does name Doe in the complaint, see (Doc. No. 1 at 4 ("Nurse or DAA L. Bitner and Nurse Gary and John Doe Nurse ignored my pain and continued giving me [T]ylenol"), and it is possible that Aycock refers to Doe when he alleges that "[b]ecause of Doctor's and Nurse's recommendations" he was moved to a different cell and placed on the top bunk, see (id.), it is

equally possible that Aycock used a possessive form of "Nurse" when he meant to spell the plural form of "Nurse," i.e., "Nurses."[6] The Court, after viewing the complaint in the light most favorable to Aycock, construes the complaint as essentially containing a typographical error, which is supported by the fact that Aycock identifies two doctors and two or three nurses (including Gregory) in his complaint, and he also uses the word "Doctor's" without specifying either of the Defendant doctors. As such, the Court understands that Aycock's last sentence among his factual allegations reads: "I actually dropped from the top bunk and had to be moved to a different cell because my cellmate was old and had the bottom bunk and bunk [sic] had no ladder and further [sic] ignored shoulder, [b]ecause of [d]octor[s'] and nurse[s'] recommendations." See (id.).

In conclusion, the Court agrees with Gregory that the Court should not have used the word "repeated" when construing Aycock's claims. The complaint alleges that Gregory (1) continued to prescribe or give Aycock Tylenol for Aycock's pain despite it being ineffective and (2) recommended that Aycock not be assigned to a bottom bunk despite his shoulder surgery and pain. The Court concludes that Gregory fails to meet his burden to show that reconsideration of the Court's decision to deny his motion to dismiss is proper under the law and the circumstances of this case. Accordingly, the Court will deny Gregory's motion for reconsideration to the extent he seeks reconsideration of the part of the Court's February 5, 2026 Memorandum and Order

---

[6] Defense counsel argues that because Aycock "showed that he knew how, could, and did make a specific allegation regarding Gregory," he could have referred to the "unidentified Nurse" as Gregory if he intended to do so. See (Doc. No. 34 at 11). This argument also works the other way, since Aycock clearly identified "John Doe Nurse" earlier in the complaint, if he intended for the "unidentified Nurse" to refer to "John Doe Nurse," he could have just done so. But he did not; instead, he used the word "Nurse."

denying his motion to dismiss. Gregory remains free to challenge the evidence, if any, Aycock relies upon to support his legal claims, through an appropriate motion.

### B. Gregory's Motion for an Extension of Time to File His Answer to the Complaint

The Court will grant Gregory's motion for an extension of time to file his answer to the complaint because he set forth good cause for the extension insofar as it would have been premature for him to file an answer while the Court considered his motion for reconsideration of the denial of his motion to dismiss. The Court will provide Gregory with a fourteen-day period to file his answer as well as direct Gregory to provide a status update regarding discovery because it is unclear from the record whether he and Aycock participated in discovery despite the Court establishing a discovery deadline.

### C. The Wellpath Defendants' Motion to Compel Discovery and Aycock's Motion for a Protective Order

In their motion to compel discovery, the Wellpath Defendants assert that they served Aycock with interrogatories and requests for production of documents, and Aycock did not respond to interrogatories nos. 3, 6, 7, 8, 10, 11, 12, 13, 14, 16, 22, and 24, as well as any of their requests for documents. See (Doc. Nos. 38 at 4, 5; 39). Aycock did not file a brief in response to this motion; therefore, the Court will deem him to be unopposed to the Court granting the motion. See M.D. Pa. L.R. 7.6 ("Any party opposing any motion, other than a motion for summary judgment, shall file a brief in opposition within fourteen (14) days after service of the movant's brief . . . . Any party who fails to comply with this rule shall be deemed not to oppose such motion.").

The Court recognizes that Aycock filed a motion for a protective order, see (Doc. No. 40); however, the Court will deem this motion withdrawn due to Aycock's failure to file a supporting

brief. See M.D. Pa. L.R. 7.5 ("Within fourteen (14) days after the filing of any motion, the party filing the motion shall file a brief in support of the motion. If the motion seeks a protective order, a supporting brief shall be filed with the motion. If a supporting brief is not filed within the time provided in this rule the motion shall be deemed to be withdrawn."). However, the Court notes that Aycock appears to argue in his motion that he provided complete answers to the moving Defendants' interrogatories and indicates his belief that the moving Defendants already had his records pertaining to his "medical, [b]illing, [r]adiology records[, and] . . . all grievances filed including decisions and appeal." See (Doc. No. 40 at 1). Even if the Court considers this motion as Aycock's response in opposition to the Wellpath Defendants' motion to compel, the Court would still grant the motion because Aycock does not provide good cause for his failure to provide answers to all interrogatories or assert objections to interrogatories if those objections are proper and appropriate. Additionally, his belief that the moving Defendants already have certain documents does not excuse his failure to file any response to their request for production of documents and supply them with, or arrange for their inspection of, documents in his possession that are responsive to the requests. If Aycock does not possess a document responsive to the request, he needs to state as such in his response. Similarly, Aycock needs to answer the interrogatories to the best of his abilities; merely stating that he is "[e]xercising due diligence to secure further information," see (Doc. No. 39-3 at 2–5), constitutes an inappropriate and unacceptable response under the Federal Rules. See Fed. R. Civ. P. 33(b)(3) ("Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath.").

The Court also notes that among their requests for relief, the Wellpath Defendants seek a ninety-day extension of the discovery deadline, which expired on the date they filed their motion.

See (Doc. No. 38 at 2). They have also filed a motion for summary judgment and an amended motion for summary judgment, along with supporting briefs (Doc. Nos. 41–44), with Aycock having filed a brief in opposition to the amended motion for summary judgment (Doc. No. 45). Considering that the Court will grant the Wellpath Defendants' unopposed motion to compel, reopen discovery, and direct Aycock to submit responses to their request for production of documents and certain interrogatories, the Court will deny the amended motion for summary judgment without prejudice to the Wellpath Defendants refiling a new motion for summary judgment once the discovery period concludes.[7] The Court will also deny the original motion for summary judgment as moot due to the Wellpath Defendants having filed an amended motion.

## IV. CONCLUSION

For the reasons set forth above, the Court will: (1) grant the part of Gregory's motion for reconsideration to the extent he asserts that the Court misconstrued Aycock's complaint to include an allegation that he made "repeated" statements about the ineffectiveness of Tylenol he received to treat his pain; (2) deny Gregory's motion for reconsideration in all other respects, including to the extent he seeks reconsideration of the denial of his motion to dismiss; (3) grant Gregory's motion for an extension of time to file his answer to Aycock's complaint and provide him with a fourteen-day period to file his answer; (4) direct Gregory's counsel to file a written report on the status of discovery; (5) grant the Wellpath Defendants' motion to compel discovery, reopen discovery for a period of ninety days, and direct Aycock to submit complete responses to their discovery requests within 30 days; (6) deem withdrawn Aycock's motion for a protective

---

[7] The Court reminds the Wellpath Defendants that Local Rule 56.1 requires any party moving for summary judgment to submit a "separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." See M.D. L.R. 56.1. It does not appear that any such statement of material facts was submitted with the Wellpath Defendants' motion or amended motion for summary judgment.

order; (7) deny as moot the Wellpath Defendants' original motion for summary judgment due to their filing of an amended motion; and (8) deny the Wellpath Defendants' amended motion for summary judgment without prejudice to them filing a new motion once the reopened discovery period concludes.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania